**Bradford ARTHUR, Petitioner,**

v.

**SHERIFF, COUNTY OF LOS ANGELES,**
**R. K. Procunier, Director of Corrections, Respondents.**

**Civ. No. 70–1923–AAH.**

United States District Court,
C. D. California.

April 16, 1971.

Bradford Arthur, in pro. per.

Thomas C. Lynch, Atty. Gen., William E. James, Asst. Atty. Gen., Jack K. Weber, Deputy Atty. Gen., for respondents.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

HAUK, District Judge.

Petitioner is a California State prisoner, presently incarcerated in the California Correctional Institution, Tehachapi, California, after having been convicted and sentenced upon his pleas of guilty to four counts of first degree armed robbery, five years to life, and two counts of felony grand theft, one to ten years, concurrently. He now seeks a Federal Writ of Habeas Corpus to annul the State judgment and its supporting guilty pleas along with his release unless the State grants him a new trial; or in the alternative, to grant him a Federal evidentiary hearing.

Petitioner's three main contentions, around which revolve numerous satellite issues not necessary to be resolved for our decision here, are: 1) that, at the time of his guilty pleas facts existed which would have raised a "substantial doubt" as to his sanity had they been before the State court and which would have entitled him, as a constitutional right, to a hearing on the sanity issue under California Penal Code § 1368 [1]; 2) that neither he nor his counsel could waive the right to such a sanity hearing since a knowing and intelligent waiver

---

1. Penal Code § 1368. Doubt as to defendant's sanity; trial of sanity issue, order, jury; stay of criminal proceedings and discharge or retention of jury

If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity.

is necessarily predicated upon one's competency at the time of waiver; and 3) that his counsel, Sam Houston Allen was incompetent in that he failed to bring the contents of a psychiatric report to the attention of the State arraignment and plea Judge or to Petitioner's attention; and in that, as the attorney, he should have been but was not aware of the applicability of the defense of diminished capacity to his client's case.

Petitioner was, until these convictions from which he now seeks relief, a practicing attorney. He took undergraduate work at Princeton, after which he joined the Marines and attained the rank of first lieutenant. In 1957, he graduated from USC Law School and went to work in Los Angeles with the Attorney General's Office but quit after one year to enter private practice, specializing in criminal law. In 1965, he broke a leg which he says forced him to close his office. About this time he started consuming large amounts of amphetamines and barbiturates, smoking marijuana, taking opiates and drinking excessively. The Internal Revenue Service began to press him for unpaid tax obligations, seizing and selling his cars and house for partial payment, but leaving an unpaid balance due of more than Fifty Thousand Dollars. This series of events climaxed tragically in April 1968 when Petitioner robbed at gunpoint four different people in three separate locations, was arrested and made a judicial confession at his preliminary hearing on April 24, 1968. At Petitioner's request, he was permitted a psychiatric examination on May 25, 1968, but no psychiatric report was ordered. On June 11, 1968, Petitioner pled guilty to four counts of first degree robbery and two counts of felony grand theft and was finally sentenced on August 1, 1969, after a long series of sanity and narcotic addiction hearings in Department 95 of the State Superior Court and intermittant referrals to the California Rehabilitation Center, the "regular" facilities of the Department of Corrections and Camarillo State Hospital.

After his final commitment for service of the sentences, Petitioner began a lengthy series of post-conviction attempts to upset the judgment and sentences which were consistently defeated in the State courts. He brought seriatim and unsuccessful Petitions for Habeas Corpus which were summarily denied in the Court of Appeal, Second Appellate District (No. 16973, August 28, 1969), and in the California Supreme Court (No. 14352, February 28, 1970). Overlapping somewhat he had sought a Writ of Error Coram Nobis in the Superior Court, where it was denied after a lengthy hearing (No. A225800, December 8, 1969). This denial was affirmed in the Court of Appeal, Second Appellate District (2 Cr. No. 17709, June 25, 1970) in a twenty-three page unpublished opinion by Justice Clark Stephens, concurred in by Presiding Justice Otto Kaus and Justice John S. Aiso. Petition for hearing was summarily denied by the California Supreme Court (August 19, 1970). In each of these post-conviction attempts to upset the conviction Petitioner referred to and relied heavily upon a psychiatric report written by one Dr. A. R. Tweed pursuant to the examination of Petitioner permitted by the arraignment and plea Judge (Hon. Maurice T. Leader) on May 25, 1968. And, here, each of Petitioner's three main contentions is based upon the allegations that this report though not ordered by the Judge was actually written, and that it contained certain matters relating to Petitioner's mental health which were never brought to the Judge's attention at the time of the arraignment and plea.

The facts as they appear in the transcript of the Coram Nobis hearing are that while Judge Leader permitted Petitioner to be examined by a psychiatrist chosen by Petitioner (Dr. A. R. Tweed), the Judge never ordered a report from Dr. Tweed. Nevertheless Dr. Tweed did in fact write up and send Judge Leader a copy of his report which the Judge never read because although he had permitted Petitioner's psychiatric examination, he felt it would be improper to consider a report which he had not ordered. Dr. Tweed also sent a copy of his report to Petitioner's counsel, Sam

Houston Allen. But Petitioner claims Allen failed to inform him of its existence or of its contents which he claims to have been unaware of until December 24, 1968, when he was referred to Department 95 by the sentencing Judge (Hon. Rafael H. Galceran, Jr.) upon the matters contained therein. However, all the evidence in the record gives the lie to Petitioner's story that he was unaware of Dr. Tweed's psychiatric report until six months after his arraignment and plea. Petitioner's counsel, Mr. Allen, testified at the Coram Nobis hearing that Petitioner was primarily interested in being referred to the California Rehabilitation Center (CRC) for narcotic addiction treatment and was fully alert and cognizant that if he pled guilty by reason of insanity, or if the issue of insanity was brought up in any way, the case would have to be transferred out of Judge Leader's arraignment and plea Court to the Psychiatric Court, Department 95 of the Los Angeles Superior Court system. This the Petitioner did not want. He wanted to stay in Judge Leader's Court and try by every effort and subterfuge to obtain judicial referral to the CRC for narcotic treatment and rehabilitation. The weight of the evidence in the record overwhelmingly proves that Petitioner, with obvious method in his asserted madness, actually agreed to and did suppress and keep from Judge Leader the psychiatric report with his attorney's approval in his determined and effective efforts to be referred to CRC.

After reviewing the Petition, the Response, the Traverse, the numerous points and authorities presented by both parties, the Clerk's transcript, the Reporter's Coram Nobis transcript on appeal, the probation reports, the psychiatric reports and the unpublished Coram Nobis opinion of the California Court of Appeal, this Court is fully advised in the premises and orders that the Petition for Writ of Habeas Corpus be denied for the following reasons.

In his Coram Nobis appeal to the California Court of Appeal, Petitioner presented the same facts and submitted the identical allegations here reiterated. After a full and fair hearing by the Court and in an exhaustive unpublished opinion, Petitioner's contentions were determined to be without merit.

From this Court's independent examination of the relevant facts and proceedings appearing in the record, including the Clerk's and Reporter's Transcripts on Appeal, it now appears that Petitioner's contentions were adequately litigated and that the State process gave fair consideration to the issues and to the evidence. This Court determines that the State courts have made determinations which are supported by substantial and convincing evidence and finds that Petitioner has not overcome the presumption that the conclusions expressed in the State Court of Appeal's written opinion are correct, pursuant to 28 U.S. C. § 2254(d) (Supp.1967), which provides:

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction * * * evidenced by a * * * written opinion, or other reliable and adequate written indicia, shall be presumed to be correct * * *."

This Court now addresses itself, however, to the main issue in this case for the purpose of clarifying, albeit perhaps unnecessarily enlarging upon, the opinion of the California Court of Appeal. The main issue in this case is "whether enough doubt of Petitioner's incompetency existed at the time of Petitioner's pleas of guilty to require a hearing on that question." (Petitioner's Traverse p. 2). The proposition controlling this issue is set out in People v. Pennington, 66 Cal.2d 508, 518, 58 Cal.Rptr. 374, 381, 426 P.2d 942, 949 (1967), which interprets Penal Code § 1368 in the light of Pate v. Robinson, 383 U.S. 375, 86 S.Ct.

836, 15 L.Ed.2d 815 (1966), in the following language:

"Pate v. Robinson stands for the proposition that an accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense. Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary."

■ We see, then, that there are three basic elements making up this controlling proposition: 1) the test of present sanity is whether the Defendant can understand the nature and purpose of the proceedings against him and meaningfully assist counsel in his defense; 2) the defendant must come forward with the evidence; and 3) the evidence must be substantial. If all three of these requirements are satisfied, the defendant is entitled, as a constitutional right, to a hearing pursuant to Penal Code § 1368. To deprive him of that right would be a deprivation of due process of law.

But this right arises, it must be emphasized, only upon fulfillment of the three conditions precedent, and is not automatically guaranteed to every defendant. And this Court finds, beyond any reasonable doubt, that the Petitioner herein has failed to satisfy any one, much less all, of the three elements enti-

tling him to a Penal Code § 1368 hearing at the time of or immediately before entering his pleas of guilty.

Although the psychiatric report indicates that Petitioner was unable "to meaningfully form the specific intent to commit the crimes charged" and that Petitioner was "basically a sick man", it neither states, nor indicates nor even implies that Petitioner was insane at the time of the examination. What references it makes to Petitioner's insanity at the time of the commission of the offenses is immaterial to the Habeas Corpus matter now before us.

■ But, even assuming that the psychiatrist entertained a "doubt" of Petitioner's sanity at the time of the examination, such mere "doubt" would not be sufficient to satisfy the requirement of "substantial evidence" to create a legal basis for a "doubt" of Petitioner's sanity in the mind of the magistrate. What constitutes a "doubt" of Petitioner's sanity or "substantial evidence" of his insanity at the time of the judicial proceedings sufficient to form a legal basis for the § 1368 "doubt" in the mind of the magistrate is, of course, a question of degree and must be capable of measurement according to some objective guidelines. We do not, now, express an opinion as to what these guidelines are except to say that where the only evidence of doubt is contained in a psychiatric report, the psychiatrist or his report must express a more affirmative doubt of Petitioner's "present sanity" than a mere innuendo, possibility or uncertainty. See People v. Laudermilk, 67 Cal.2d 272, 283, 61 Cal.Rptr. 644, 431 P. 2d 228 (1967).[2]

2. The facts in this case of *Laudermilk* are strikingly similar to the facts in the case here before us. As a matter of fact, *Laudermilk* after having exhausted all of his possibilities and remedies in the State courts came here to our Central District of California for a Writ of Habeas Corpus which, upon the same reasoning we find compelling here in the case of *Arthur*, was denied by Judge Albert Lee Stephens, Jr., without a hearing, but after a very careful review of the entire record in the State

court system. This denial was affirmed by the Ninth Circuit PER CURIAM decision in Laudermilk v. California Department of Corrections and W. T. Stone, Superintendent, 439 F.2d 1278 (9th Cir. 1971). We note particularly that the Court of Appeals in affirming the denial of Habeas Corpus for *Laudermilk* considered Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and held that his plea of guilty was not invalid under the standards laid down by the Su-

■ Furthermore, considering the psychiatric report in the light of the psychiatrist's testimony taken at the Coram Nobis hearing, November 13, 1969, there can be no doubt that the psychiatrist interpreted his report to mean that Petitioner was presently sane and capable of understanding the nature and purpose of the charges against him and of meaningfully assisting counsel in his own defense:

"I had some doubts (as to whether Petitioner could meaningfully and rationally assist counsel in his defense) at that particular time. I believe I expressed it in my report because of the depression and the agitation and the emotionalism that surrounded the situation and the result of my examination at that time (Coram Nobis Transcript p. 70) * * *. Well, I felt that the defendant could assist counsel in his own defense, but I felt that the decisions as to what should be done and how they should be done should have been left to counsel rather than for counsel to follow the opinions of his client (Tr. p. 71) * * *. I felt that, really, he couldn't be of too much help to the counsel if counsel were going to follow what he wanted to be done (Tr. p. 73)."

Although the psychiatrist thought that Petitioner was probably "mentally ill" at the time of the making of his pleas (Tr. p. 78), it is also apparent that he thought this mental disturbance, induced in part by the use of large quantities of narcotic drugs and alcohol, was not tantamount to "present legal insanity" and that Petitioner was able to meaningfully assist counsel even if not capable of conducting the case alone.

Despite the psychiatrist's unheeded legal advice that Petitioner should not enter guilty pleas because of his viable defense of insanity at the time of commission of the offenses, and despite his belief that the Petitioner, formerly an attorney, could not meaningfully conduct his own defense or make decisions which his counsel should then unquestionably follow, the psychiatrist felt that Petitioner did understand the proceedings against him and could assist counsel by supplying necessary facts, pointing out untruths in prosecution evidence, etc.: "He could help insofar as he could tell the facts of what happened * * *. But I don't believe that decision should have been left to him" (Tr. p. 71).

■ Assuming, arguendo, that a Penal Code § 1368 "doubt" of Petitioner's sanity existed at the time of his pleas of guilty, he was still not entitled to a sanity hearing without coming forth with this evidence from whatever source derived, whether from his own behavior as observed by the court and counsel, or from the expert opinion of one or more psychiatrists. His right to a sanity hearing never ripened or vested because he failed to come forward with any evidence, even assuming there did ever exist any basis in fact for a legitimate "doubt" of his sanity.

■ Although it is, indeed, true that one cannot knowingly and intelligently waive the right to a sanity hearing the purpose of which is to determine one's basic competency, there was no waiver in this case because the right never existed. Contrary to the Petitioner's contention that the judge at the preliminary hearing deliberately failed to read a psychiatric report that was before him, the weight of all the evidence is that the Petitioner, with "method in his asserted madness," purposely suppressed the report through his attorney in the hope which he thereby realized that he would be sentenced to the California Rehabilitation Center for treatment as a narcotic addict rather than be sent to Camarillo to await his return to a sanity that he had never forsaken.

We need not delve deeper into the question of what constitutes "substantial evidence" of present insanity under Penal Code § 1368 for it would be entire-

preme Court therein. Obviously we hold the same thing here, refusing a Writ of Habeas Corpus to *Arthur* because his plea of guilty is in no way invalid under Pate v. Robinson, supra.

ly too speculative in the light of our conclusion that there was no evidence at all at the time of the guilty pleas of present legal insanity upon which a "doubt" under Penal Code § 1368, as interpreted by People v. Pennington, could be predicated.

Upon analysis of Petitioner's contentions, it is apparent that there are no grounds or reasons of any kind to grant an evidentiary hearing or to support the issuance of a writ of habeas corpus. This Court is satisfied that the State court conviction and decisions on appeal and collateral coram nobis attack were fairly rendered, that a just determination of this controversy has been reached, and that all Federal standards have been met.

Petitioner is not entitled to any relief since he does not demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (3) (1959); In re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); and Martinez v. Wilson, 357 F.2d 173 (9th Cir. 1966).

Therefore, it is hereby ordered that the Petition for Writ of Habeas Corpus be, and the same is, denied.