**UNITED STATES ex rel. Jerry ROTH, Petitioner-Appellant,**

v.

**John L. ZELKER, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.**

**No. 451, Docket 71–1889.**

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1972.

Decided Feb. 15, 1972.

---

4. Not the Assistant in charge of the case in the district court.

Allan M. Pepper, New York City, for petitioner-appellant.

Mortimer Sattler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, of counsel), for respondent-appellee.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, denying relator's petition for a writ of habeas corpus.

We affirm.

The petitioner-appellant, Jerry Roth was convicted of the felony murder (homicide in the course of an attempted rape) of a ten year old girl in Bronx County, New York. Roth was apprehended on November 24, 1958, a few hours after the commission of the crime and arraigned on November 25, 1958. He was examined by two psychiatrists appointed at the direction of the County Court, and in a report to the Court dated January 20, 1959 they found that he was capable of understanding the charge and making his defense ([1946] N.Y. Laws ch. 635, [1939] N.Y.Laws ch. 861 § 2, as amended, formerly N.Y.Code Crim.Proc. §§ 870, 659–662). He was indicted on January 20, 1959 and on February 17, 1959 pleaded not guilty with a specification of insanity.[1] He was tried before Judge Eugene G. Schultz and jury in Bronx County Court which convicted him of felony murder on May 20, 1959. His conviction was affirmed by the Appellate Division (13 A.D.2d 295, 216 N.Y.S.2d 590 (1st Dep't 1961)) but the Court of Appeals reversed and ordered a new trial, holding that the January 20, 1959 psychiatrists' report which contained incriminating material elicited from Roth during his competency examination was improperly admitted into evidence. (11 N.Y.2d 80, 226 N.Y.S.2d 421, 181 N.E.2d 440 (1962)).

On November 13, 1962 Roth withdrew his not guilty plea and entered a plea of guilty. A reading of the minutes of the plea hearing before Hon. William Rand, New York Supreme Court, indicates that Roth who was represented by three experienced counsel admitted the attempted rape, the strangulation of the girl and hiding her body. He responded affirmatively to the usual voluntariness questions and stated that he believed he was sane at the time the crime was committed. On December 4, 1962 Roth appeared before the same judge, and was sentenced to 20 years to life imprisonment. The court questioned both Roth and his attorneys about his present mental state. Roth responded "I feel well; I am not insane." His three attorneys

---

[1] In 1943, at the age of 7, petitioner was sent to a residential school for mentally disturbed children, on a Department of Welfare commitment initiated by his mother. He remained there for over five years. In July, 1948, he was admitted to the Bellevue Hospital Psychiatric Service on remand from the Bronx Domestic Relations Court. In September of that year, Roth was re-admitted to Bellevue Psychiatric Hospital by order of the Bronx Children's Court. In 1949, he was committed to the Edenwald School and several months later he ran away. He was then remanded again to the Bellevue Psychiatric Hospital. Subsequently he was transferred to the Kings Park State Hospital on November 4, 1949. When his condition improved he was released in October, 1950 and was finally discharged from out-patient care in October, 1951, at the age of 16.

each stated that they had conferred with him on numerous occasions and were of the opinion that he was then sane and competent to understand the nature of the proceedings. Counsel did call to the attention of the court Roth's history of mental disturbance. The record also indicates that the sentencing judge was fully familiar with Roth's prior mental history as well as the opinion of the Court of Appeals reversing his conviction.

In October, 1968 Roth commenced a *coram nobis* proceeding in the Supreme Court, Bronx County. In his petition, he alleged that he was insane at the time of the plea, that his attorneys were incompetent and had coerced him into pleading guilty. At the hearing before Justice Greenfield the sole witness was a psychiatrist called on behalf of Roth. He testified that the petitioner was incapable of making any rational decision under stress and that no one with a history of schizophrenia, even if in apparent remission, would ever be capable of a rational and intelligent guilty plea. His opinion was based upon three interviews with Roth, two in 1967 and one in 1969, and a review of the psychiatric records kept on Roth since childhood. The State introduced no evidence but relied on the testimony in the 1959 trial record. In his opinion, Justice Greenfield noted the difficulties in deciding the question of competence in 1962 based upon expert testimony given over two years before the plea and the conflicting testimony at the hearing based upon observations five to seven years after. On the basis of the total record the court concluded that petitioner had been capable of making a rational plea. The Appellate Division affirmed Justice Greenfield's dismissal of the petition (34 App.Div.2d 896, 311 N.Y.S.2d 954 (1st Dep't 1970)), and the Court of Appeals denied leave to appeal on May 10, 1970.

On April 5, 1971 Roth commenced the present application for a writ of *habeas corpus* in the Southern District of New York. He claimed that he had been deprived of due process since he was mentally incompetent at the time of his guilty plea and no hearing had been ordered to determine his competency to plead. Judge Wyatt denied the application without a hearing in an order dated June 2, 1971, holding that Roth had a full and fair hearing on the issue of his competency to plead guilty, and thus a federal court hearing was not mandated. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). A certificate of probable cause was denied. On September 13, 1971 this court granted Roth's motion for a certificate of probable cause, assignment of counsel and leave to proceed in *forma pauperis*.

On this appeal, petitioner's principal reliance is upon Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) which holds that it is a denial of due process of law to convict a defendant where there is sufficient doubt of his competency unless a competency hearing is held at the time of trial and that a later hearing will not cure this defect. We hold that Pate v. Robinson, *supra*, is markedly distinguishable and that there has been no denial of due process in this case. In *Pate* the defendant had a continuing history of mental disturbance from childhood, including the 1953 murder of his infant son coupled with an attempted suicide, plus a brutal assault on a relative in 1957 or 1958, which culminated in the murder of his wife in May, 1958 in the presence of several witnesses. His mother-in-law, on many occasions, sought to have him arrested and "put away" because of his abnormal behavior. He had previously been hospitalized in a state mental institution. At his 1959 non-jury trial four defense witnesses testified to his present insanity. Despite this history of continuing mental disturbance and physical aggression, the state court refused to hold a hearing as to his competency to stand trial. He was found guilty. On the state's appeal from the granting of a writ of *habeas corpus* by a federal court, the Supreme Court held that the defendant had been denied due process of law. Under rele-

vant state law in Illinois a judge on his own motion was obligated to hold a hearing if the evidence raised a "bona fide" doubt as to the competency of a defendant to stand trial. The trial court refused to receive expert testimony on the question of the defendant's competency. The Supreme Court further held that if a hearing was then held in 1966, some seven years later, it would not provide a reliable determination of his competency to stand trial in 1959. Cf. Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960).

█ The facts in this case are quite distinguishable. While Robinson had a continuous history of mental disturbance up to the time of his final murder, Roth who had been hospitalized (see footnote 1 *supra*) had been released from out-patient care and formally discharged in 1951. There ensued a period of seven years wherein petitioner gave no signs of any serious mental disturbance. In fact, he was married and his wife was pregnant at the time he committed the murder for which he was convicted. Unlike Robinson, Roth was examined prior to his 1959 trial and found competent to stand trial by psychiatrists appointed by the court pursuant to statute. On trial his principal defense was that he was insane at the time the murder was committed. He introduced expert testimony to that effect. The jury found otherwise and his conviction was reversed because of the improper introduction of incriminatory evidence. The Court of Appeals was concerned not with his competency to stand trial but with his sanity at the time the crime was committed pointing out: "Capacity to understand the nature of the charge and to defend at the time of the trial contemplate different norms from knowing the nature and quality of the act and that it was wrong, which is the standard of judgment to be applied in determining whether a defendant is not guilty on the ground of legal insanity." People v. Roth, *supra*, 11 N.Y.2d at 83–84, 226 N.Y.S.2d at 422, 181 N.E.2d at 441 (1962).

█ As this court has pointed out, *Pate* does not mandate a competency hearing if the evidence does not warrant one. U. S. ex rel. Evans v. LaVallee, 446 F.2d 782 (2d Cir. 1971), see Tyler v. Beto, 391 F.2d 993, 997 (5th Cir. 1968). While we recognize that an incompetent defendant cannot waive his right to a determination of his fitness to stand trial, Pate v. Robinson, *supra*, 383 U.S. at 384, 86 S.Ct. 836, it is only where the evidence before the court provides a "reasonable ground" for believing that he is incompetent that the court should order an examination ([1939] N.Y.Laws ch. 861, § 2, formerly Code Crim.Proc. § 658).[2] See Arthur v. Sheriff, County of Los Angeles, 325 F.Supp. 1320 (C.D. Cal.1971).

█ Here the New York Court of Appeals ordered a new trial; it did not question relator's competency to stand trial, that issue had already been determined in 1959, two and one-half years before. There was no reason at all for the sentencing court in 1962 to order a second competency examination to determine Roth's ability to plead at that time. There was no evidence at all of any mental disturbance between the time of the trial and the plea. On the contrary three attorneys then charged with his representation advised the court that he was sane and capable of understanding his defense. The opinion of a defendant's attorney as to his ability to understand the nature of the proceedings and to cooperate in the preparation of his defense, is indeed significant and probative.[3]

The guilty plea entered here, to murder in the second degree, under all of

---

2. This criterion is substantially the same as that in the federal statute ("reasonable cause to believe [that the defendant is incompetent]" 18 U.S.C. § 4244) and that in the Model Penal Code ("reason to doubt [the defendant's] fitness to proceed" § 4.05 (Proposed Final Draft No. 1, 1961)).

3. Association of the Bar of the City of New York & Fordham Law School, Mental Illness, Due Process and the Criminal Defendant 80–82 (1968) ; Comment, Competency to Stand Trial: A Call for Reform, 59 J.Crim.L.C. & P.S. 569, 574–576 (1968).

the circumstances was not in any event imprudent. Roth was facing a jury trial for the brutal murder of a child during the commission of an attempted rape. In such a felony murder case the state did not have to establish deliberation, premeditation or intent to kill.[4] The court by a 4 to 3 vote had held that Roth's confession to the District Attorney was admissible, and it would be the law of the case in a subsequent trial. Roth's acceptance of the advice of counsel is not at all indicative of a lack of rationality.

Having reviewed and considered all of the arguments made on this appeal we find no violation of any due process guarantees and affirm the order below.

Affirmed.

---

4. [1909] N.Y.Laws ch. 88, § 1044(2), formerly N.Y.Penal Law § 1044(2) provided:

    "The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed:

    " . . . .

    "2. . . . . Without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise."

See People v. Luscomb, 292 N.Y. 390, 395, 55 N.E.2d 469 (1944); Buel v. People, 78 N.Y. 492 (1879).