**Vincent YANNI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 76 Civ. 4029.**

United States District Court, S. D. New York.

Oct. 20, 1976.

Siegel, McGee, Bartlo, Kelleher & Hirschorn, Buffalo, N. Y., for petitioner; Michael R. McGee, Buffalo, N. Y., of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for respondent; Angus C. Macbeth, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner Vincent Yanni and seven others were convicted in September 1972 after an extended jury trial before former District Judge Harold R. Tyler, Jr., of a conspiracy which the Court of Appeals, in affirming the convictions, described as "the operation of a large-scale narcotics ring from suburban New York and New Jersey which supplied dealers and distributors in Harlem."[1] Petitioner was sentenced to a term of imprisonment of eight years. Now, four years after his conviction, he moves to vacate the judgment of conviction on the ground that he was mentally incompetent to stand trial. The basis of the application is that due to a severe head injury sustained more than a decade before the trial petitioner suffered "headaches, loss of memory, seizures and fainting spells [which] made it impossible for the Petitioner to properly prepare for trial with his attorney or even to be able to properly listen to and understand the proceedings against him." The application has been referred to the undersigned for disposition.

Petitioner's trial commenced on August 21, 1972 and continued until the return of the jury verdict on September 19, 1972. He was represented by an experienced criminal defense attorney. In the third week of trial, on the morning of September 5, 1972, after a long Labor Day weekend recess, petitioner's attorney reported to the Court that he had been informed petitioner had been hospitalized the night before for treatment following complaints of headaches and dizziness over the weekend. Inquiry developed that petitioner was under the care of two physicians, Drs. Perotta and Fine. Upon the prosecutor's application the Court decided to appoint a Dr. Shanzer, who had examined petitioner the week before, to examine him again. Pending reports from the doctors the case was adjourned to the following morning.

Late in the afternoon of September 5th at a conference attended by counsel the Court was informed that Dr. Shanzer was of the opinion petitioner "was fit to stand trial, just as fit, in fact, as he was last week." Other than petitioner's subjective complaints, he could find no rational basis on which to conclude that in fact he was suffering from headaches and dizziness. At this conference no definitive report was forthcoming from either Dr. Perotta or Dr. Fine, who had examined petitioner at the hospital. The Court was informed that neither had treated petitioner previously and that Dr. Messer, a neurologist who was familiar with petitioner's condition and had treated him since 1970, had not been consulted with respect to his current complaints.

1. *United States v. Manfredi*, 488 F.2d 588, 590 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

The Court observed in somewhat of an understatement that it all seemed "very peculiar" that although Dr. Messer, a qualified neurosurgeon, had been treating petitioner for over two years petitioner suddenly chose "to go to the Pelham Bay Hospital, which is a considerable piece from where he lives here in New York, and [deal] with physicians who were not neurologists at all and . . . had had nothing to do with his former neurologist or neurosurgeon, Dr. Messer . . . ." The Court concluded there was no objective evidence that defendant could not stand trial, ordered his appearance the following morning, and added that if petitioner "can offer competent medical proof that he is not fit to stand trial, it seems to me that the Court is going to have to allow him a chance to do that . . . but . . . the burden should fairly be placed on Mr. Yanni to bring any evidence to bear which would show that he is, in fact, not able to go on with the trial. . . . [F]rom all that I have heard, . . . there is evidence that he is able to go forward, but I will give him a chance to persuade me otherwise."

When the trial resumed the next morning, the Court specifically questioned petitioner's counsel as to whether he wished to present any medical evidence, but no such evidence was tendered.[2] Indeed, counsel noted that neither Dr. Perotta nor Dr. Fine could testify with medical certainty that petitioner could not continue with the trial. The Court then ordered the trial to proceed.

At no time did petitioner's experienced counsel ever suggest, let alone move for, a halt of the trial and a severance upon the ground that petitioner was incompetent, that he could not consult with his attorney either before or during the trial or that he could not comprehend the trial proceeding.[3] Nor did his counsel move for relief under 18 U.S.C., section 4244. And it is not without significance that on this motion no affidavit is submitted by petitioner's trial attorney who, as the one with "the closest contact"[4] with him during the trial certainly would have knowledge of whether petitioner understood the trial proceedings and was competent to stand trial or able to confer with him; nor is there any explanation for the failure to submit such an affidavit.[5]

In short, this was the not uncommon situation encountered now and then during an extended trial where a defendant temporarily becomes or believes he is ill and signs himself into a hospital for examination with the hope of delay or a trial severance. Indeed, a close reading of the record strongly suggests that petitioner's sudden hospitalization under the care of doctors who were unfamiliar with petitioner's prior medical history was calculated to force a mistrial and severance of his case. Based upon reports of the doctors who examined petitioner and upon its own observation, the Court did not have " 'reasonable cause' to believe [petitioner] was mentally incompetent."[6] Apart from this, with all the events known to trial counsel, no motion was made to set

---

**2.** Cf. *United States ex rel. Rizzi v. Follette,* 367 F.2d 559, 561 (2d Cir. 1966).

**3.** Cf. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

**4.** *Pate v. Robinson,* 383 U.S. 375, 391, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (Harlan, J., dissenting); see *United States ex rel. Roth v. Zelker,* 455 F.2d 1105, 1108 (2d Cir.), cert. denied, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).

**5.** See *United States ex rel. Brooks v. McMann,* 408 F.2d 823, 826 (2d Cir. 1969); *United States ex rel. Homchak v. New York,* 323 F.2d 449, 450 (2d Cir. 1963), cert. denied, 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964); *United States ex rel. Irving v. Henderson,* 371 F.Supp. 1266, 1276 (S.D.N.Y.1974).

**6.** *United States v. Marshall,* 458 F.2d 446, 450 (2d Cir. 1972). See also *United States v. Hall,* 523 F.2d 665, 668 & n. 3 (2d Cir. 1975); *United States ex rel. Roth v. Zelker,* 455 F.2d 1105, 1108 (2d Cir.), cert. denied, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972); *United States ex rel. Evans v. LaVallee,* 446 F.2d 782, 786 (2d Cir. 1971), cert. denied, 404 U.S. 1020, 92 S.Ct. 691, 30 L.Ed.2d 668 (1972); *United States v. Knohl,* 379 F.2d 427, 435–36 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); see generally *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

aside the jury verdict or to vacate the judgment of conviction on the grounds now proffered, nor was the contention urged upon appeal for reversal of the judgment. In sum, the application is wholly without merit; accordingly, it is denied.