**UNITED STATES of America,
Appellee,**

v.

**Ralph BORELLI, Appellant.**

**No. 236, Docket 34818.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1970.

Decided Dec. 4, 1970.

Certiorari Denied March 1, 1971.
See 91 S.Ct. 963.

M. Mitchell Morse, New Haven, Conn., for appellant.

Leslie Byelas, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D. Conn., on the brief) for appellee.

Before MEDINA, WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Ralph Borelli appeals from a conviction of bank robbery in violation of 18 U.S.C. §§ 2113(a), (b), after a jury trial in the United States District Court for the District of Connecticut before Robert C. Zampano, J. Borelli was sen-

1. Count three, which charged violation of 18 U.S.C. § 2113(d), was not submitted to the jury.

tenced to 16 years imprisonment on count one of the indictment, and received a suspended sentence on count two.[1] For the reasons stated below, we affirm.

On June 26, 1969, two men held up the Wallingford, Connecticut branch of the Colonial Bank & Trust Company at gun-point, taking $28,000 in currency. Although both men had covered their faces with stocking masks, appellant Borelli's co-defendant, John Reed, was quickly implicated in the robbery. On June 28, a New Haven police officer recovered a pillow case from a river. The case contained, among other things, a blue shirt with gold trim, two pairs of shoes, and money wrappers. The contents were brought to the New Haven detective bureau where an officer recognized the blue shirt as one he had seen John Reed wearing on June 24. The size of the larger pair of shoes was also found to be that previously worn by Reed.

Reed was further implicated when film of the robbery taken by the bank's camera was developed. Enlargements of that film showed that the taller of the two holdup men had peculiar tattoo markings on one forearm. At trial, an FBI specialist compared this film with photographs of Reed's forearm and concluded that the markings were identical.

The evidence proffered against appellant Borelli was also substantial, although not quite as overwhelming. The other pair of shoes found in the pillow case were the same size Borelli had earlier worn in the Connecticut State Prison. Likewise, the film of the bank robbery revealed that the shorter of the men had a peculiar way of standing on his right foot. Testimony was offered at trial that this stance was similar to Borelli's. Finally, Nicholas Bernardo, initially charged along with Reed and Borelli,[2] testified for the Government

2. Bernardo was originally indicted with appellant Borelli on the bank robbery counts, but was subsequently allowed to plead guilty to a reduced charge.

that he had helped Reed and Borelli prepare for the robbery and had attempted to arrange alibis for them. The essence of Borelli's defense proved to be just such an alibi. Testimony was introduced that at the time of the robbery he had been with his girl friend at another couple's house. This testimony was allegedly buttressed by a diary entry, but severe questions of credibility were raised on cross-examination of Borelli's witnesses. The jury ultimately found both defendants guilty of bank robbery in violation of 18 U.S.C. §§ 2113(a), (b).

## I.

■ Appellant raises three issues on appeal. The first is the threshold question whether the trial court erred in refusing to sever his case from Reed's. Borelli and Reed were indicted separately, but appellant admits that the initial joinder of the indictments for trial was proper under Fed. R. Crim. Proc. 8 and 13. He also recognizes that under Rule 14 he must demonstrate substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one, and that a trial court's refusal to grant severance will rarely be disturbed on review. United States v. DeSapio, 435 F. 2d 272, 280 (2d Cir. 1970). See also Brown v. United States, 126 U.S.App.D. C. 134, 375 F.2d 310, 315, (D.C. Cir.) cert. denied, 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); United States v. Granello, 365 F.2d 990, 995 (2d Cir. 1966) (dictum), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967); Note, Joint and Single Trials under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 565–66 (1965). However, appellant argues that there was such prejudice here and that the trial court abused its discretion in denying severance under Rule 14.

Borelli first claims that the sole justification for the joint trial was governmental economy, and that this was an inappropriate consideration in this case. The general rule is that persons jointly indicted should be tried together "where the indictment charges * * * a crime which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts." United States v. Kahaner, 203 F.Supp. 78, 80–81 (S.D.N.Y. 1962), aff'd, 317 F.2d 459 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L. Ed.2d 65 (1963). Such a rule conserves judicial resources, alleviates the burdens on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials.[3] We see no reason why that general rule did not apply in this case, absent a showing of prejudice under Rule 14.

Appellant next argues, however, that because of "unique circumstances" in this case, he was prejudiced by the joinder of his trial with Reed's and that therefore severance was required. The "unique circumstances" involve Bernardo's testimony. Appellant points out that his witnesses clearly placed Bernardo's credibility in issue, but that the Government was able to show by objective physical evidence (the tattoo on the arm) that Bernardo was telling the truth about Reed. Therefore, in deciding whether Bernardo was telling the truth about Borelli, the jury may well have judged Bernardo's credibility (and Borelli's guilt) on the basis of evidence which could not have been directly offered against Borelli. Hence, appellant argues, the joinder of Borelli and Reed was unfair to Borelli and the failure to sever was reversible error.

■ We do not agree. The circumstances here were far from unique. The general credibility of a prosecution witness may be strengthened in any case where he offers testimony against two defendants and the physical evidence against one defendant is overwhelming. Indeed, this type of support of a prosecution witness may happen in any joint

---

3. The Government brief aptly points out that "[t]he witness is the forgotten man in the administration of justice.

trial where the evidence against one defendant is for any reason much stronger than the evidence against another. But unless joint trials are to be outlawed altogether, we would not hold that this kind of "prejudice"—the bolstering of the credibility of a prosecution witness —requires severance as a matter of law. This is particularly so when the argument now made to us was apparently never made to the district court either in a motion to sever or in a request for a limiting charge. Accordingly, the denial of severance was not reversible error.

## II.

Appellant's second argument is that the prosecutor improperly "testified" to a fact not in the record, which was prejudicial to defendant. During his summation, the prosecutor made the following remarks:

> Try to stand like that bank robber is standing in Government Exhibit 5. * * * That's habit. That's something you can't disguise with a stocking. * * * You might even have noticed that when Mr. Borelli had sat at this table when he was leaning forward his foot was crooked. I don't know if you noticed that, but that's habit. You can't disguise that. I think that's a telling piece of evidence.

Although no objection was made by defense counsel at the time of the summation, Borelli now contends that this statement requires reversal of his conviction. His premise is that the prosecutor's comment constituted factual testimony not subject to the normal procedural safeguard of cross-examination. From this he argues that the improper testimony served to rehabilitate Bernardo's otherwise shaky testimony and injected plain error into the trial.

■ Close examination of the prosecutor's statement reveals that it was at worst ambiguous. It could have been interpreted as merely asking the members of the jury whether they had watched defendant during the trial and noticed

anything about his foot. Certainly, given the testimony of other witnesses concerning Borelli's stance, the blown-up photograph, and the introduction of motion pictures of the robbery, the jury members might well have already observed Borelli's posture at the table. On that view, the prosecutor's comment would not have been error at all, much less plain. On the other hand, the jurors might have thought that the prosecutor was asking them to confirm what he himself had noticed. On this theory, the prosecutor would have been "testifying" as to facts which had earlier been asserted before the jury. Since this inference was possible, the prosecutor might have been better advised to forgo his comment, but the statement does not fall into the class of "plain errors or defects affecting substantial rights [which] may be noticed although they were not brought to the attention of the [trial] court" under Fed.R.Crim.P. 52(b). The presence of this earlier testimony and the jury's ability to observe the facts as to defendant's foot distinguish the cases on which appellant relies. In United States v. Spangelet, 258 F.2d 338 (2d Cir. 1958), Garris v. United States, 129 U.S.App.D.C. 96, 390 F.2d 862 (D.C. Cir.) (1968), and Ginsberg v. United States, 257 F.2d 950 (5th Cir. 1958), the prosecutors' summations all stated facts peculiarly within their knowledge which had not been presented earlier to the jury.

## III.

■ Appellant's final point is that the trial judge erred in not holding an evidentiary hearing on whether certain allegedly prejudicial evidence came to the attention of the jury. During the course of the trial, a teller entered the courtroom to identify Borelli in conjunction with the robbery of another bank. Borelli brought this occurrence to the attention of the trial judge in a posttrial motion, which was heard on the day of sentence. Borelli alleged that he knew at least two persons who were in the courtroom and heard the teller point

**504**

him out. He also stated that if given the opportunity he could find others who also witnessed the identification. Borelli asked for an evidentiary hearing to determine whether this "walk through identification" was brought to the attention of the jurors, thereby prejudicing their decision in the case before them.

In open court, Judge Zampano inquired whether defense counsel had observed the incident. Borelli's attorney answered that he was unaware of the identification. The prosecutor was also questioned and stated that the identification took place during recess in order to avoid any possibility that Borelli might be prejudiced before the jury. Finally, the trial judge stated on the record that he had been present at all times when the jury was in the courtroom, that he had not observed the identification, and that any conversations between the alleged witness and the alleged police officers in the back of the courtroom "were not made known to the jury or to the Court * * *."

On the basis of this record we conclude that the trial court did not err in denying Borelli's motion for an evidentiary hearing.

Affirmed.