UNITED STATES of America ex rel.
William Lee EVANS, Petitioner-
Appellant,

v.

J. Edwin LaVALLEE, Warden, Clinton
Prison, Dannemora, New York,
Respondent-Appellee.

No. 428, Docket 33306.

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1971.

Decided July 13, 1971.

Robert Hermann, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for petitioner-appellant.

Brenda Soloff, Asst. Atty. Gen. of State of New York (Louis J. Lefkowitz, Atty. Gen. of State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before . FRIENDLY, Chief Judge, WATERMAN, Circuit Judge, and Mc-LEAN, District Judge.*

McLEAN, District Judge:

Petitioner is a state prisoner who was convicted by a jury verdict on March 23, 1962, in the Court of General Sessions, New York County, of the crimes of sodomy, assault with intent to commit sodomy, and robbery in the first degree. In April 1968 he applied to the District Court for the Northern District of New York for a writ of habeas corpus. He claimed that both at the time of the commission of the crimes and at the time of trial he was insane, and that the trial court's failure to hold a hearing on the subject of his mental capacity deprived him of due process of law. Judge Foley denied the petition without a hearing by order dated April 25, 1968. His opinion is unreported. In February 1969 this court granted a certificate of probable cause and assigned counsel to represent petitioner on his appeal. Aft-er examining the record, we agree with the conclusion reached by the District Court and we therefore affirm the order.

Petitioner was sentenced on May 21, 1962 as a second felony offender to prison terms aggregating from 65 to 130 years. On his direct appeal the Appellate Division affirmed his conviction but reduced the sentence to 20 to 50 years. People v. Evans, 20 A.D.2d 764, 247 N. Y.S.2d 492 (1st Dept. 1964). The New York Court of Appeals denied leave to appeal, and the Supreme Court of the United States denied certiorari. Evans v. New York, 379 U.S. 861, 85 S.Ct. 123, 13 L.Ed.2d 64 (1964).

Thereafter petitioner instituted two successive coram nobis proceedings in the state court. In the first, begun in July 1964, petitioner claimed that he was insane at the time of his trial. The petition was denied in September 1964, the Appellate Division affirmed the order, People v. Evans, 24 A.D.2d 843, 263 N.Y.S.2d 443 (1st Dept. 1965), and leave to appeal to the Court of Appeals was denied. In his second proceeding, begun in February 1967, petitioner claimed that he was insane at the time of commission of the crimes. This petition was denied in March 1967. Again the order was affirmed by the Appellate Division, People v. Evans, 28 A.D.2d 1093, 284 N.Y.S.2d 688 (1st Dept. 1967), and leave to appeal to the Court of Appeals was denied. It is thus clear that petitioner has exhausted his state remedies.

The proceedings in the Court of General Sessions immediately prior to, during, and immediately subsequent to, petitioner's trial have an important bearing upon petitioner's present contention. They may be summarized as follows.

Petitioner was indicted twice. The first indictment charged him with sodomy committed on Robert Jakubik on September 5, 1961, and with assault with intent to commit sodomy and with robbery committed on John McDermott on November 12, 1961. The second in-

* Of the District Court for the Southern District of New York, sitting by designation.

dictment charged him with sodomy and with robbery committed on James White on August 1, 1961. The two indictments were consolidated for trial.[1] The court appointed The Legal Aid Society to represent petitioner in the consolidated case.

Prior to the consolidation, the Court of General Sessions, on January 10, 1962, made an order, pursuant to Section 658 of the Code of Criminal Procedure, committing petitioner to Kings County Hospital for examination to determine whether petitioner was mentally competent to stand trial. The order was made on motion of the district attorney. The record does not reveal what transpired at the time or why the district attorney requested the examination. Presumably it was because he had become aware of petitioner's history. Since 1938 petitioner, on several occasions, had been confined in mental hospitals, both in Michigan and in New York, sometimes under his own name, and sometimes under the name of James Ramsey. Each time he had been discharged after treatment for varying periods. His most recent commitment had been to Bellevue Hospital for observation in the fall of 1961. Again he was found sane and released.

On January 23, 1962, two psychiatrists who had examined petitioner at Kings County Hospital, reported to the court. Their conclusion was that petitioner was not insane and that he was capable of understanding the charges against him and of making his defense. His electroencephalogram was normal. When interviewed he was coherent and relevant in his statements. No hallucinations or paranoid delusions were elicited from him. The doctors found him to be "well oriented in all three spheres."

As far as appears, neither side objected to this report. Accordingly, the court set the case down for trial. The trial began on February 20, 1962. After the court had granted the People's motion to consolidate the indictments, the selection of a jury began. Six jurors had been chosen when petitioner objected to his continued representation by Legal Aid counsel. He told the court that he felt that counsel's questions to prospective jurors, particularly his reference to the complaining witnesses as "boys," was prejudicial to him. He pointed out that he was "facing the rest of my life in the penitentiary" on these charges and that they were of vital concern to him. He stated that he knew that he could ask for a mistrial later on, but "why waste the time of the State and your time, the District Attorney's time and everybody else." He urged that he be given new counsel immediately. Petitioner's counsel asked to be relieved at this point. The upshot was that the court declared a mistrial, relieved petitioner's counsel, and appointed another lawyer to represent him.

The trial began again on March 1, 1962. No claim was made by petitioner or his new attorney that he was then insane or that he had been insane at the time of the offenses. After the trial had been in progress for some two weeks, petitioner suddenly interrupted a prosecution witness and in an outburst of obscene language accused him of perjury. The court instructed the jury to disregard it and adjourned the trial until the following day.

On the next day, petitioner made a scene in court, banged his feet on the floor, and struggled with court officers. Petitioner's attorney then moved to have petitioner committed to a mental hospital for examination as to his sanity. The court called a doctor to examine him forthwith but the doctor advised the court that the petitioner refused to be examined. He recommended a psychiatric examination. The court thereupon granted the motion, committed petitioner to Bellevue Hospital for examination, and adjourned the trial in the meantime.

1. In a prior habeas corpus proceeding, this court held that the consolidation did not violate due process. United States ex rel. Evans v. Follette, 364 F.2d 305 (2d Cir. 1966), cert. denied, 385 U.S. 1016, 87 S.Ct. 733, 17 L.Ed.2d 552 (1967).

The psychiatrist's report dated March 22, 1962 concluded that petitioner was not in such a state of insanity as to be incapable of understanding the proceedings or of making his defense. The report noted that petitioner's behavior when left to himself in the ward differed markedly from his conduct when interviewed by the doctors. He took part in an agreeable fashion in the activities of the ward, mingled freely with the other patients, and manifested no unusual behavior. At his interviews, on the contrary, he refused to cooperate, refused to answer questions, denied any knowledge of having been in court, and denied that he had previously been in Bellevue. It was the psychiatrist's opinion that in all probability petitioner was malingering and that he was "consciously evasive."

The trial resumed on March 23, 1962. Petitioner was present in a strait jacket. He struggled and yelled. His attorney moved for a mistrial. The court denied the motion. Defendant then rested without presenting any evidence. Defense counsel took no exception to the judge's charge. The jury retired and in due course returned a verdict of guilty on all counts.

After petitioner was convicted but before he was sentenced, the court committed him again to Bellevue Hospital for a psychiatric examination, his third during the course of this case. The doctors' report dated April 2, 1962 reaffirmed their previous conclusion that petitioner was not insane. Their opinion was unqualified that petitioner "was obviously consciously malingering" during the interview, as contrasted with his normal behavior in the ward. They found "no evidence of a psychosis or mental deficiency."

Thereafter in May 1962 a separate trial was held before a jury to determine whether petitioner was the man who had previously been convicted, under the alias James Ramsey, of assault with intent to commit rape, petitioner having refused to admit that fact. The jury found that he was. On May 21, 1962 petitioner was sentenced as a second felony offender.

The petition for habeas corpus, filed by petitioner *pro se*, alleges that petitioner is presently sane but that he was insane both at the time of the commission of the offenses and at the time of trial. Upon this appeal, however, petitioner has confined his argument to the second of these propositions, *i.e.*, his alleged lack of capacity at the time of trial.[2]

In support of his contention that the trial court's failure to hold a hearing on that issue deprived him of due process, petitioner relies primarily on Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The Supreme Court there held that defendant had not been accorded his Fourteenth Amendment right to a fair trial because the Illinois court in which he was tried for murder did not comply with an Illinois statute which required the trial court, on its own motion, to conduct a sanity hearing where the evidence raised a bona fide doubt as to defendant's competence to stand trial. The Supreme Court concluded that the evidence was sufficient to raise that doubt. Accordingly, it directed that a writ of habeas corpus issue and that defendant be released unless Illinois tried him again on the murder charge, after first holding a hearing as to his present competence, if circumstances required it. The issue of defendant's mental capacity had been raised and strongly urged by defendant and considerable evidence on that subject had been introduced at the trial. The trial court nevertheless had refused to give defendant an opportunity to offer expert testimony, and without hold-

2. The State suggests that if petitioner was sane at the time of trial, he waived any claim of insanity at the time of the offense by not raising it as a defense at the trial. Petitioner does not argue to the contrary. Apparently the claim of insanity at the earlier stage has been abandoned.

ing a formal sanity hearing, had proceeded to find defendant guilty.

In the present case, the New York court appears to have strictly observed the relevant New York statute. Pursuant to Section 658 of the Code of Criminal Procedure, the trial court ordered a psychiatric examination of petitioner before the trial began. This produced a report expressing the opinion that petitioner was capable of making his defense. Section 662-a of the Code provides that when the psychiatrist's report is received, counsel for both sides shall be afforded an opportunity to controvert the psychiatrist's findings. No claim is made that the trial court failed to afford counsel that opportunity. Petitioner did not controvert the report and did not assert that he was presently insane.

Section 662-c of the Code provides that if after giving counsel for the parties the opportunity to be heard on the psychiatrist's report, the court is of the opinion that defendant is not incapable of understanding the charge against him or of making his defense, "the proceedings against defendant shall be resumed as if no examination had been ordered." This is what occurred.

Thereafter, in view of subsequent developments which we have previously recounted, the court directed two additional psychiatric examinations of petitioner. Each of these produced the same conclusion, i.e., that petitioner was consciously malingering and that he was capable of making his defense to the charges. Again, it does not appear that petitioner's counsel controverted this report or asked for a formal sanity hearing. The court therefore proceeded with the trial until its conclusion.

■ Pate did not render unconstitutional the procedures provided for in the New York Code of Criminal Procedure which the trial court followed and applied in this case. We do not understand Pate to mean that a trial court must always hold a sanity hearing, on its own motion, no matter what the evidence is and regardless of whether or not a defendant requests one. Since

Pate was decided, this court has refused to find a violation of due process by a New York trial court in not holding a sanity hearing where the facts did not require it. United States ex rel. Rizzi v. Follette, 367 F.2d 559 (2d Cir. 1966).

The New York procedure is not unlike the federal procedure prescribed by 18 U.S.C. § 4244. Since Pate was decided, this court has held that Pate does not require that there must always be a sanity hearing under Section 4244 in a federal criminal trial, regardless of the circumstances. United States v. Knohl, 379 F.2d 427 (2d Cir. 1967), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

■ In Pate the Supreme Court held that the evidence before the trial court required a sanity hearing, and hence that the court's failure to hold one violated due process. In the present case the evidence, in our opinion, did not require such a hearing. Petitioner was found on three different occasions to be capable of standing trial. His own behavior at the trial was consistent with that view, at the beginning. His complaints about the examination of prospective jurors by his first attorney had a rational basis, and his comments at the time showed that he was fully aware of the situation which confronted him. Only toward the end of the trial did he suddenly begin to indulge in violent and obstructive behavior. At that stage the psychiatrists found him to be "consciously evasive" and "consciously malingering." The trial court had no reason to think otherwise. We can perceive no useful purpose which would have been served by interrupting the trial still further in order to hold a full scale sanity hearing. We are satisfied that the trial court's failure to do so upon its own motion did not deprive petitioner of due process of law.

We take this opportunity to express our gratitude to Robert Hermann, Esq., of The Legal Aid Society, petitioner's assigned counsel, for his able brief and argument on petitioner's behalf.

The order is affirmed.