UNITED STATES of America,
Appellee,

v.

Robert MARSHALL et al., Defendants-
Appellants.

Nos. 450, 453 and 454, Dockets 71–1808,
71–1814 and 71–1815.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1972.

Decided March 23, 1972.

Thomas R. Pattison, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., E. D. N. Y., David G. Trager, Asst. U. S. Atty., on the brief), for appellee.

Ivan S. Fisher, New York City (Alan Scribner, New York City, on the brief), for appellant Marshall.

Walter Coleman, Huntington, N. Y., for appellant Solina.

Richard A. Levy, New York City (Eisner & Levy, New York City), for appellant Guglielmo.

Before HAYS and OAKES, Circuit Judges, and CLARIE, District Judge.[*]

CLARIE, District Judge:

All three appellants were convicted of bank robbery, 18 U.S.C. § 2113(d), after a jury trial before Chief Judge Mishler, and each was sentenced on July 9, 1971 to twenty-five years imprisonment. Appellant Guglielmo seeks a reversal of his conviction on the ground that his obstreperous and bizarre behavior during trial imposed a constitutional duty upon the trial judge to initiate further inquiry into his competency to stand trial. Appellants Marshall and Solina claim that their convictions should be overturned, because the trial court refused to grant their repeated motions for a severance from Guglielmo and for a mistrial, because of the highly prejudicial trial behavior of Guglielmo. We conclude that the trial court did not abuse its discretion, and affirm the judgments of conviction.

The appellants were arrested while fleeing from their overturned car after a high-speed police pursuit. When appellant Marshall refused to halt at the order of one of the police officers, he was shot in the arm. Substantial evidence was adduced at trial against all of the appellants.[1]

The facts material to this appeal are not in dispute. In December 1970, some four months prior to trial, Guglielmo's counsel moved pursuant to 18 U.S.C. § 4244 [2] for an order directing a judicial

---

[*] United States District Judge for the District of Connecticut, sitting by designation.

1. In addition to the identification of the appellants by the officers who arrested them, Guglielmo and Solina were identified by bank employees as the men who committed the robbery; Marshall was identified by one of the pursuing police officers as the driver of the getaway car. Other evidence included the stolen money, along with the bait money, found in the trunk of the car, and various items (clothing, wigs, walkie talkies) used to commit the crime.

As he discharged the jury, Judge Mishler remarked:

"I can't recall a case so heavily weighted against the defendants as this one was. The evidence was just overwhelming."

2. 18 U.S.C. § 4244 provides in part:

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity

determination as to whether Guglielmo was competent to stand trial. The motion was granted and Guglielmo was committed to the Medical Center for Federal Prisoners at Springfield, Missouri, for psychiatric examination. The report of the Medical Center indicated that,

"It was the unanimous opinion of the Psychiatric Staff that Mr. Guglielmo has the capacity to understand the nature of the charges against him and can cooperate with counsel in the presentation of his defense if he so desires; however, there is a good possibility that should Mr. Guglielmo return back to court that he will attempt to engage in bizarre behavior or act out his need to appear psychotic, and to a Psychiatrist unaware of his past history, it is a possibility that conclusions might be drawn that this man is actively psychotic which has not been substantiated by psychological testing at this institution . . . ."

Neither the defendant nor the Government requested a hearing to determine Guglielmo's competency.

At the suppression hearing conducted April 1, 1971, appellant Guglielmo accused the Government of "lying," and sought to dismiss his assigned counsel because he suspected that the lawyer was a government "agent." Later in the day, the trial judge concluded that although the report from the Medical Center was "positive" in its opinion as to Guglielmo's competency, "after viewing this defendant I am not sure at this point that he is competent." The trial court granted Guglielmo's motion to appoint a private psychiatrist to examine Guglielmo, and ordered that the doctor be given the complete Medical Center report and informed of Guglielmo's courtroom behavior.

The examining physician, Dr. Smith, reported:

"In short, Mr. Guglielmo showed extremely uneven performance, not characteristic of any psychiatric syndrome, but indicative to me of his malingering mental illness.

"In my opinion, Mr. Guglielmo is competent to stand trial in that he shows good understanding of his legal situation (including the charges against him) and the capacity to cooperate with his attorney in his defense.

"However, I anticipate that Mr. Guglielmo is likely to continue to display disruptive behavior in a conscious effort to confound legal process."

At the commencement of the trial, the judge ruled that Guglielmo was competent on the basis of the doctors' reports, and concluded that there was no need for a hearing on the question. Neither the defendant nor the Government requested any hearing.

Guglielmo created several disruptions during the eight-day trial.[3] There were several outbursts when he directed obscenities and accusations toward the Court, witnesses, and the prosecutor. On one occasion, the Court ordered Guglielmo removed from the courtroom and there was one instance when he chose to absent himself. At one point, he requested that the Court just sentence him and spare him the unfair trial he was receiving. On another occasion, Guglielmo hurled a water pitcher at the prosecutor and later threw a chair toward the jury rail. Finally, during summation by Solina's counsel, Guglielmo cut his wrists with a razor blade and also cut his tongue, purportedly attempted to swallow the blade.[4]

---

or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto . . . ."

3. Although Guglielmo told the trial judge that he wished to represent himself, the

judge instructed assigned counsel to sit next to and assist Guglielmo. It appears that to some extent Guglielmo cooperated with his attorney. Counsel did cross-examine the witnesses who testified against Guglielmo, and made an opening statement and a summation.

4. The Court individually questioned several of the jurors as to what they saw of this ·

He was removed from the courtroom and taken to a hospital and was not present when the judge charged the jury or when the verdict was returned.

After Guglielmo's supposed attempt at suicide, his assigned counsel informed the Court that according to Guglielmo's wife, he had tried on four or five occasions to commit suicide. While at the Federal Medical Center, he had told one of the doctors that in 1965, after a drinking spell [5] and a suicide attempt about which he could remember nothing, he was confined in a mental hospital in Brooklyn for six months. He was, apparently at that time, diagnosed as a psychopathic personality.[6]

Prior to his being sent to the Federal Medical Center for the competency examination, Guglielmo apparently made an attempt to slit his wrists at the West Street Detention Center. When he returned there upon completion of the competency examination, Guglielmo purported to hang himself and to swallow razor blades. It is relevant to note that on several occasions, he maintained that he could remember nothing about the events which immediately preceded his arrest.

*Guglielmo:*

Guglielmo contends that although the trial court twice ordered him to be examined to determine his competency, the trial court was under a constitutional duty, in light of appellant's "highly abnormal" behavior at trial, to order a hearing to determine if appellant was in fact competent to stand trial.[7]

In United States v. Sullivan, 406 F.2d 180, 185 (2d Cir. 1969), this Court pointed out that,

> "No part of a criminal proceeding may be proceeded with against a defendant who is at the time 'insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense . . .' 18 U.S.C. § 4244. The test under the statute is stated in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960):
>
> '(The) test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him.' "

■ Appellant relies upon the decision of the Supreme Court in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In that case, the Court held that due process requires a

---

incident. None of these jurors indicated any knowledge of observing Guglielmo act in a manner which might cause serious injury to his person. One said he thought he saw him press a pen point into a vein on the wrist, but none of the jury indicated any notion that he had "attempted suicide."

5. In this same interview, Guglielmo told the doctor that in his opinion, the present charge resulted from his drinking, which had been heavy for the past three years.

6. The Report of the Psychiatric Staff Examination prepared by the Medical Center indicates that Guglielmo was so diagnosed in 1965, without specifically mentioning his confinement in the Brooklyn mental hospital. The Psychiatric Evaluation Report accompanying the Staff Examination Report, however, indicates that the doctors at the Medical Center were aware of Guglielmo's confinement at the mental hospital.

7. It is clear that under the statute, the court must hold a hearing on the defendant's competency only "(i)f the report of the psychiatrist indicates a state of present insanity or . . . mental incompetency in the accused." 18 U.S.C. § 4244. See Arnold v. United States, 432 F.2d 871, 873–874 (10th Cir. 1970); Cheely v. United States, 367 F.2d 547, 548–549 (5th Cir. 1966), cert. denied, 387 U.S. 923, 87 S.Ct. 2039, 18 L.Ed. 2d 978 (1967); Stone v. United States, 358 F.2d 503, 506 (9th Cir. 1966). Since neither report in the instant case indicated a state of mental incompetency but rather concluded that Guglielmo was feigning mental illness, the trial court was under no duty after receiving those reports, to conduct a hearing on the competency question.

state court, on its own initiative, to conduct a competency hearing when there is a bona fide doubt as to the defendant's competence to stand trial. This Circuit has ruled that *Pate* "did not create any new federal right or a new procedure for applying for a hearing in the federal courts on the issue of mental competency to stand trial." United States v. Knohl, 379 F.2d 427 (2d Cir. 1967), cert. denied 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). 18 U.S.C. § 4244 specifically provides that "whenever after arrest and prior to the imposition of sentence," the United States Attorney, the defense or the trial court, has "reasonable cause" to believe that the accused is mentally incompetent to stand trial, the court shall order the accused to be examined by a qualified psychiatrist. If the report of the psychiatrist "indicates" a state of mental incompetency in the accused, the court must then hold a hearing and make a finding on the competency question. It is clear, then, that 18 U.S.C. § 4244 requires of the federal courts what *Pate* requires of the state courts: an inquiry into the defendant's competency whenever it becomes manifest that there is reasonable cause to believe the defendant is incompetent. In the federal courts, the statute provides that the first step in this inquiry is an examination of the defendant by a psychiatrist.

The issue in this case thus presented is whether Guglielmo's courtroom behavior was such that the trial court had "reasonable cause" to believe that the appellant was mentally incompetent, and therefore was required to initiate the statutory procedure to determine his competency. We conclude that the trial court did not abuse its discretion in failing to order the appellant to be examined a third time.

■ The trial court had before it two psychiatric reports, both of which not only indicated that the appellant was competent [8] but significantly predicted that he would intentionally engage in disruptive behavior. Although the psychiatric staff of the Medical Center unequivocally concluded that Guglielmo was competent, the trial judge granted the appellant's motion for a second precautionary examination, after observing his courtroom behavior. When the second examination confirmed the findings of the first, the trial judge became convinced that Guglielmo was malingering. His observations of Guglielmo throughout the remainder of the trial did not alter that conclusion.[9] Under these circumstances, we cannot hold that the trial court abused its discretion in failing to regard appellant's disruptive conduct as providing "reasonable cause" to believe he was incompetent. *See* United States ex rel. Evans v. LaVallee, 446 F.2d 782 (2d Cir. 1971); Mirra v. United States, 379 F.2d 782, 787 (2d Cir. 1967), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); *cf.* United States v. Sullivan, 406 F.2d 180, 185 (2d Cir. 1969); United States ex rel. Rizzi v. Follette, 367 F.2d

---

8. In Pouncy v. United States, 121 U.S.App. D.C. 264, 349 F.2d 699 (D.C.Cir.1965), the District of Columbia Circuit concluded that the trial court erred in not further investigating the defendant's competency, after the defendant accused his lawyers of conspiring with the Government against him, and said, in the jury's presence, "Plead me guilty to the charge." The Court pointed out that although a "conclusory" mental examination indicated the defendant was competent,

> "Later developments may throw doubt on the prediction, particularly when, as in this case, the report does not show the hospital's understanding of 'competence', the tests it employed, or the certainty of its diagnosis." 349 F.2d at 700.

In the instant case, on the other hand, the reports from the Medical Center list the psychological tests Guglielmo was given, indicate the psychiatric staff was familiar with the legal concept of competence, and conclude that it was the unanimous opinion of the psychiatric staff that appellant was competent. Further, the Medical Center's Report of Psychiatric Evaluation concluded that Guglielmo was "completely oriented in all spheres," and that "his memories for remote and recent events were equal."

9. The trial record indicates, for example, that on several occasions Guglielmo consulted with his attorney.

559 (2d Cir. 1966); *see also* United States v. Cook, 418 F.2d 321, 323–324 (9th Cir. 1969).

*Marshall and Solina:*

We next consider the contentions of Marshall and Solina, that the trial court erred in refusing to grant their motions for a mistrial and for a severance from Guglielmo. They represent that Guglielmo's conduct was prejudicial to them, in that it likely effected a "spill-over" of ill-will toward them, or at least caused the jury to view them unsympathetically, because of their association with Guglielmo.

*Mistrial Motions:*

■■ "A motion for mistrial is addressed to the sound discretion of the trial judge." United States v. Kompinski, 373 F.2d 429, 432 (2d Cir. 1967). The trial judge concluded that Guglielmo's conduct would not prevent Marshall and Solina from receiving a fair trial, and we cannot say that he thereby abused his discretion. In United States v. Aviles, 274 F.2d 179 (2d Cir. 1960), cert. denied, 362 U.S. 974, 80 S.Ct. 1507, 4 L.Ed.2d 1009 (1960), and United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963), cert. denied sub nom., Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), this court dealt with claims similar to those made by Marshall and Solina. What we said in those cases is equally apt here:

> "Manifestly it was not error to deny the mistrial motions. If such conduct by a co-defendant on trial were held to require a retrial it might never be possible to conclude a trial involving more than one defendant; it would provide an easy device for defendants to provoke mistrials whenever they might choose to do so. Under all the circumstances the trial judge's instructions

adequately dealt with the situation and his denial of the mistrial motions was proper." 274 F.2d at 193; 319 F.2d at 931.[10]

*Motions to Sever:*

■ Appellants do not, and cannot, contend that they were improperly joined with Guglielmo under Rule 8(b), Fed.R. Crim.P. Rather, appellants argue that under Rule 14, Fed.R.Crim.P., their joinder with Guglielmo was prejudicial, and that the trial judge should have granted them a severance either at the outset of the trial, based upon the psychiatrists' predictions of Guglielmo's misconduct and upon his behavior at the pre-trial hearing, or after the several instances of disruption which occurred at the trial.

> "The general rule is that persons jointly indicted should be tried together 'where the indictment charges . . . a crime which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts.' United States v. Kahaner, 203 F.Supp. 78, 80–81 (S.D.N.Y.1962), aff'd, 317 F.2d 459 (2d Cir), cert. denied, 375 U.S. 836, 84 S. Ct. 74, 11 L.Ed.2d 65 (1963)." United States v. Borelli, 435 F.2d 500, 502 2d Cir. 1970), cert. denied, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971).

In Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960) the Supreme Court pointed out that "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." In Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954), the Supreme Court held that a motion for severance is addressed to the "sound discretion of the trial judge."

---

10. At the trial, both Marshall and Solina also demonstrated some propensity to disruption. On one occasion, in the absence of the jury, Marshall accused his brother, who was on the witness stand, of lying, and emptied a water pitcher on the floor rather than allow his brother a drink of water. On another occasion, Solina attempted to make a speech to the court in the presence of the jury. The trial judge was forced to instruct Solina to remain quiet five times before the jury could be excused, whereupon Solina was permitted to address the court.

The appellant's argument that they were prejudiced by a "spill-over" of ill-will created by Guglielmo's behavior is not persuasive. This is not a case like United States v. Kelly, 349 F.2d 720 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), where this court determined that a severance should have been granted to one defendant when damaging evidence as to stock fraud was introduced only against his two co-defendants for some three months. The court concluded that some of the evidence introduced against his co-defendants undoubtedly "rubbed off" on the defendant. The introduction into evidence of administrative testimony by the co-defendants was particularly prejudicial; this testimony implicated the defendant but was inadmissible hearsay as against him. 349 F.2d at 758–759. In this case, the evidence indicated that all three appellants were equally involved in the same bank robbery. Marshall and Solina did not claim that any of the evidence adduced at the trial against Guglielmo prejudiced them, but only that the latter's obstreperous, disruptive trial conduct did so. We conclude that such prejudice is too speculative, at least in the circumstances of this case, to warrant our finding that the trial judge abused his discretion.

The trial court took great pains to repeatedly and carefully instruct the jury to disregard Guglielmo's trial conduct in determining the guilt of each of the appellants, Marshall and Solina, as well as that of Guglielmo himself. There is no reason to assume that the court's instructions were not efficacious. See Frazier v. Cupp, 394 U.S. 731, 733–736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. DeSapio, 435 F.2d 272, 280 (2d Cir. 1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971); United States v. Berger, 433 F.2d 680, 685 (2d Cir. 1970), cert. denied, 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 246; United States v. Corallo, 413 F.2d 1306, 1327–1328 (2d Cir. 1969), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969).

Despite the overwhelming evidence in this case,[11] the jury deliberated some four hours, and during their deliberations, asked for the testimony of each police officer who saw each appellant exit the overturned car. Hence, it cannot be said that the jury did not consider carefully the evidence against each appellant. Cf. United States v. Jordan, 399 F.2d 610, 615 (2d Cir. 1968), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968).

We conclude that appellants Marshall and Solina have failed to carry their burden, under Rule 14, of demonstrating "substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one." United States v. Borelli, supra, 435 F.2d at 502. Furthermore, the evidence introduced at trial "overwhelmingly established" the guilt of the appellants, and "we can easily conclude beyond a reasonable doubt" that Marshall and Solina would have been convicted by the trial jury absent the disruptive trial behavior of Guglielmo. United States ex rel. Rosenberg v. Mancusi, 445 F.2d 613, 619 (2d Cir. 1971). See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgments of conviction are affirmed.

11. See note 1, supra.