UNITED STATES of America, Plaintiff,

v.

Ciro Wayne MANCUSO, et al., Defendants.

No. CR–N–89–24–ECR.

United States District Court, D. Nevada.

Feb. 27, 1990.

See also, D.C., 726 F.Supp. 1210.

Dorothy Nash Holmes, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Katherine Alieri and Patrick S. Hallinan, San Francisco, Cal., Donald Cavin Hill, Reno, Nev., for Mancuso.

N. Patrick Flanagan, Asst. Fed. Public Defender, Reno, Nev., for Roth.

Doron Weinberg, San Francisco, Cal., Glynn Cartledge, Reno, Nev., for Zybach.

Peter Robinson, Santa Rosa, Cal., Thomas C. Bradley, Reno, Nev., for Welch.

Marc Picker, Reno, Nev., for Stoianoff.

Mary E. Boetsch and Patrick M. Mooney, Reno, Nev., for Stockman.

Loren Graham, Zephyr Cove, Nev., for McKeown.

Judd C. Iversen, San Francisco, Cal., Tom Wright, Reno, Nev., for Hoffman.

Fred H. Atcheson, Reno, Nev., for Moore.

Lawrence J. Semenza, Reno, Nev., for Sandhaus.

Lawrence Wishart, Reno, Nev., for Zehm.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On October 24, 1989, the Grand Jury returned a superseding indictment (hereinafter "the indictment") in the above entitled case, wherein eighteen defendants are charged with various crimes related to drug trafficking, including several conspir-

acies, ITAR, money laundering, and engaging in a continuing criminal enterprise. There are 49 counts in the indictment.

■ It is not uncommon for large criminal cases to be severed into smaller, more manageable groups. This practice of severance is becoming even more widespread with the increase in number and size of drug-related and RICO indictments, which often include numerous defendants and allegations of multiple conspiracies and continuing criminal enterprises. There appear to be three justifications for severance. One basis for severance is Fed.R.Crim.P. 14. Under Fed.R.Crim.P. 14, when it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants, a district judge has discretion to "order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14. *See, e.g., United States v. Van Cauwenberghe,* 827 F.2d 424, 431 (9th Cir.1987) (trial judge may order severance if it appears that a defendant may be significantly prejudiced by a joint trial with his codefendants), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

■ However, in reviewing cases where severance has been utilized, it is apparent that Rule 14 is not the only authority upon which courts rely. Cases have been severed in which there is no mention of prejudice to the prosecution or to the defendants. *See, e.g., United States v. Bissell,* 866 F.2d 1343, 1348 (11th Cir.1989) (superseding indictment charging forty-one defendants with various violations of drug laws, CCE, and RICO ultimately severed into three trials; reasons for severance not given), *cert. denied,* —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989). It appears that a second justification for severance lies in the court's inherent authority to manage its docket. Many courts have, either explicitly or implicitly, relied on this inherent power to manage its case load, and have severed out of a concern for the efficient administration of justice and judicial economy. *See, e.g., United States v. Gallo,* 668 F.Supp. 736, 754–58 (E.D.N.Y.

1987) (severance of 22–count indictment naming sixteen defendants based on case management considerations), *aff'd,* 863 F.2d 185 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989).

■ Finally, there are a number of cases that, while purporting to rely on Rule 14, have made decisions to sever after expressing case management concerns. These hybrid cases have, therefore, considered issues of judicial administration and case management when ruling on motions made pursuant to Rule 14. *See, e.g., United States v. Vastola,* 670 F.Supp. 1244, 1260–65 (D.N.J.1987) (in ruling on defendants' motions to sever under Rule 14, court cited case manageability as basis for severance of RICO defendants from non–RICO defendants).

This Court is interested in exploring the authority for and propriety of severance in the present action. All motions to sever under Rule 14, motions relating to joinder under Rule 8, any severance or joinder which might be judicially dictated, and all other motions for severance or relating to joinder are hereby referred to United States Magistrate Phyllis Halsey Atkins for consideration and decision.

■ In addition, the Magistrate shall consider whether the interests of judicial economy and the efficient administration of justice might call for severance of the *Mancuso* indictment purely on case management grounds.

The Magistrate shall consider the following in her evaluation and decision regarding severance and joinder under the rules and cases, and severance based on case management grounds. A discussion of several "hybrid" cases is included, because the overlapping case management concerns may illuminate the present situation.

## CASE MANAGEMENT

There is a policy in favor of joint trials, and a general rule that defendants jointly indicted ordinarily should be jointly tried. *United States v. Polizzi,* 801 F.2d 1543, 1553 (9th Cir.1986). In addition, it has long been assumed that a single, joint trial is

more efficient than multiple trials, especially where multiple defendants are alleged to be members of a single conspiracy. However, "[t]hat shibboleth should not unreflectively be taken for granted in the complex, multi-defendant case." *Gallo*, 668 F.Supp. at 754.

Although there is much to be said in favor of joint trials in certain cases, a single trial in a case of this size is fraught with problems.[1] It imposes enormous burdens upon the defendants, defense counsel, prosecutors, jurors, the court, and the judge. Because dozens of people are required in court each day, the absence of any one person may bring the entire trial to a screeching halt. Scheduling conflicts are legion; setting the case for trial involves reconciling the individual calendars of the prosecutors and each defense attorney with the court docket. Where each attorney involved is carrying a full caseload, conflicts with other trials are probable.[2] The longer the case lingers, the more pronounced these conflicts become.

A lengthy trial of multiple defendants works a unique hardship on each party involved. The jurors are taken from their daily endeavors and prohibited from engaging in the pursuits of their daily lives. They are required to sit "stoically and silently for hours every day, day after day." *Id.* The defendants often are required to endure months of pretrial incarceration before their case is finally adjudicated. They themselves are required to sit through month after month of trial. Often significant amounts of time consuming evidence are presented which are unrelated to a particular defendant.

Cases of this magnitude so monopolize the time of defense attorneys, in preparation and trial, that they are unable to continue serving other clients. One client of-

ten becomes their only client. The Court also is forced to expend an enormous amount of time managing a single case, to the detriment of other cases. When one court room is occupied for months on end, other litigants must queue up for the remaining court rooms. This strains an already overloaded docket, and unconscionably delays all other cases.

Further, the personal strain on the judge is significant. As the *Gallo* decision notes,

> The grinding tension of such a long, complex case, particularly where the judge is making rulings which are continuously on the borderline of probative force and prejudice, is debilitating. The worry about frequent adjournments necessitated by the unavoidable problems of 18 jurors, 10 or more defendants, 10 or more counsel for the defendants, and any prosecutorial persons and witnesses and other personnel, all of whom must be present at all times, creates added tensions.

*Id.* at 755.

The above considerations must be weighed carefully by the trial court when faced with a case of this magnitude. Not only would severance into some smaller units relieve the burdens mentioned above, but overall trial time probably would be decreased. *See id.* at 756–58. Certain defendants charged with discrete violations might be tried in separate trials,[3] and much more quickly than otherwise, because the court does not have to wait until all the parties and their counsel are available.

The assumption that joint trials are more efficient than multiple trials is supported "when the indictment charges crimes 'which may be proved against all the defendants by the same evidence and which result[] from the same or a similar series of

---

**1.** For an excellent and thorough discussion of the court's inherent power to control the administration of complex criminal cases, the deleterious effects of prolonged complex cases, and an analysis of the efficiency and prejudice of severance, see *Gallo*, 668 F.Supp. at 754–61.

**2.** These concerns have been largely overcome in the present action: local or backup counsel are required to be prepared in all aspects of the

case, in the event that primary counsel must be absent from trial, or that a scheduling conflict prohibits primary counsel from going forward.

**3.** For example, defendant Mancuso is charged with three counts of subscribing to a false tax return and three counts of laundering of monetary instruments. Those counts do not allege involvement of any other defendants.

acts.' " *Id.* at 756, *quoting United States v. Borelli,* 435 F.2d 500, 502 (2nd Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). However, in *Gallo* the court found that assumption unsupported, where the defendants were charged with

> a startling variety of multifarious acts and predicate offenses even though they are all part of, or connected to, the RICO conspiracy. The series of events, the schemes, the evidence and the witnesses, are not identical in the various 'portions' of this case.... Unlike a traditional conspiracy, where all of the principals will likely have been involved in the same events and agreements, we instead confront here a conspiracy to participate in a multi-faceted enterprise. The agreement to participate takes many diverse and unrelated forms among the participants. Proof against each of them is hardly duplicitous. Such is the catch-all nature of the RICO law. The Gambino Family is alleged as a wide-ranging criminal network of highly diverse crimes.

*Gallo,* 668 F.Supp. at 756.

On the surface, this description of the *Gallo* indictment could be used to describe the indictment in *Mancuso.* It would be instructive for the Magistrate to review the *Mancuso* indictment thoroughly for such diversity of alleged overt and predicate acts, in order to evaluate the efficiency of severance.

## HYBRID CASES: RULE 14 and CASE MANAGEMENT

Many cases dealing with motions for severance under Rule 14 also include some discussion of case management and/or judicial economy as a factor to be considered. *See, e.g., United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988) (the district court generally has broad discretion to organize the size of its cases by balancing the concerns of fairness and case management), *cert. denied,* — U.S. —, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United*

States v. Kennedy, 564 F.2d 1329, 1334 (9th Cir.1977) (serious consideration is properly to be given to the factor of judicial economy by the trial court in the exercise of its discretion when severance is sought), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *Vastola,* 670 F.Supp. at 1260–65 (114–count indictment naming twenty-one defendants for RICO and non-RICO violations severed pursuant to Rule 14 into seven separate trials; case manageability also cited as additional basis for severance).

In the Second Circuit, the rule for obtaining review of a district court's denial of a severance motion under Rule 14 has been that the defendant must demonstrate that he was denied a fair trial as a result of joinder, not merely that he might have had a better chance for acquittal at a separate trial.[4] *United States v. Chang An–Lo,* 851 F.2d 547, 556 (2nd Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). However, this rule recently has been modified in the context of complex criminal cases involving a multitude of defendants and counts. In *United States v. Casamento,* 887 F.2d 1141, 1151–53 (2nd Cir.1989), the Court stated that in cases where the prosecution's case will exceed four months, the burden is on the prosecutor to "present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants." *Id.* at 1152. Furthermore, the Court stated that the district judge should require the prosecutor to "make an especially compelling justification for a joint trial of more than ten defendants." *Id.*

These guidelines were utilized by the United States District Court for the Southern District of New York in *United States v. Gambino, et al.,* 729 F.Supp. 954 (S.D.N.Y.1990). There, the district court relied on

---

**4.** The rule for reviewing a denial of severance in the Ninth Circuit is substantially similar: the defendant must show that "joinder was so 'manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sev-

er.' " *United States v. Kaplan,* No. 84–1260, slip op. 1245, 1252, 895 F.2d 618, 621 (9th Cir.1990), *quoting United States v. Whitworth,* 856 F.2d 1268, 1277 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989).

*Casamento* in severing the trials of twelve defendants named in a sixth superseding indictment,[5] which indictment contained seven counts. The defendants, allegedly members of an international organization known as "the mafia" or "la cosa nostra," were charged with importing large quantities of narcotics. The government charged, in addition, that the organization engaged loansharking, gambling, and extortion to supplement its income from the narcotics trade.

After reiterating the general rule that "where 'defendants ... are jointly indicted [they] should be jointly tried,'" *id.*, *quoting United States v. Ventura*, 724 F.2d 305, 312 (2nd Cir.1983), the Court proceeded to analyze the case in light of *Casamento*. Because the prosecution's case was scheduled to last over four months, and because there were more than ten defendants named in the superseding indictment, the Court required the government to make "an especially compelling justification for a joint trial." *Gambino*, 729 F.Supp. at 970. The Court held that the government had not carried its burden of justifying a joint trial for all twelve defendants, where the major theme of the government's opposition to the severance motions was that all defendants had worked closely together in the same narcotics conspiracy.

The Court did, however, recognize that group trials would be superior to twelve separate trials. Three considerations guided the Court in its determination to split the defendants into two groups for trial. First was the government's interest in prosecuting the case in a similar fashion as it was presented to the grand jury. Where feasible, "co-conspirators should be tried together." *Id.* Second, governmental and public interests in a quick and efficient resolution of the charges weighed in favor of group trials. Third, minimizing the total number of trials would reduce stress for those witnesses compelled to testify at each trial; and reduce the relative advantage for those later-tried defendants who would gain knowledge of the contents and weaknesses of a witness's testimony.

The Court explained its rationale for breaking the defendants into two groups for purposes of trial. Group A primarily consisted of individuals alleged to be leaders of the conspiracy and active from its start in the mid–1970's. Group B mainly consisted of "secondary wholesale distributors" or those who "oversaw and facilitated the transportation, smuggling and storage of multiple kilogram quantities of narcotics...." The Court acknowledged that it was unable to divide the defendants in such a way as to perfectly satisfy the primary concerns of efficiency and fairness; however, the Court concluded that division of the defendants into two groups of roughly equal size adequately met those goals. In addition, the court addressed a concern of overlapping evidence, and a desire to "minimize the quantity of evidence not pertaining to a particular defendant which that defendant would have to sit through. Thus the Court grouped defendants depending on the extent of overlapping evidence based on the face of the indictment, especially the overt acts."

The division made by the court reflected the need to balance the interests of efficiency and fairness in large, complex cases. Dividing the defendants into two groups minimized the spillover prejudicial effect of being tried as one large group, while avoiding twelve separate trials of those who the grand jury found to be participants of a single narcotics conspiracy.

SEVERANCE PLANS

■ The cases cited above are instructive in evaluating whether the interests of justice and judicial economy might best be served by some division of counts and/or defendants in the *Mancuso* case. While this Court is not persuaded that mere length alone ought to require a heightened showing that a joint trial is "more consistent with the fair administration of justice" than is some division of the case, *see Casamento*, 887 F.2d at 1152, we do believe

---

**5.** The sixth superseding indictment named 15 defendants; however, three remained fugitives at the time of trial.

that projected length of trial is one factor to be considered along with others, including complexity of the case, number of defendants and witnesses, and the degree to which the evidence overlaps. In considering the division of the case, the Magistrate should, if appropriate, receive motions from the parties and hold hearings or other proceedings to assist her in making her decision.

If it appears that severance is warranted on the basis of case management, then the Magistrate shall enter her order dividing the case as she deems appropriate, in accordance with this Order. There are several ways in which a large case such as this can be divided. One approach would be to sever certain defendants, either partially or entirely, to be tried sequentially. Another would be to sever out certain counts. Review of the indictment reveals several logical groupings of counts and defendants.[6]

Another technique involves a combination of the two approaches, where two groups of defendants are tried in tandem. This method requires two prosecutors to conduct two separate, but related, trials in adjoining courtrooms. The trials are scheduled so that witnesses, upon concluding testimony in the first trial could immediately begin testifying in the second. This approach is convenient for overlapping witnesses; it allows witnesses to complete their testimony during consecutive trial days, instead of being required to testify in two trials separated by months or perhaps years. Having the two trials conducted virtually within the same time frame also minimizes the impact of any advantage gained upon hearing the witness's testimony in the first trial.[7]

These are but a few examples of how large, complex cases can be divided into more manageable units. Permutations of the above approaches yield more plausible examples. The Court is confident that a balanced division can be made in the event that severance is called for.

IT IS, THEREFORE, HEREBY ORDERED that all motions for severance or which relate to joinder are hereby referred to Magistrate Atkins for consideration and decision. In evaluating the potential for severance, the Magistrate shall give due consideration to overlapping concerns of case management.

IT IS FURTHER ORDERED that Magistrate Atkins shall enter appropriate orders of severance if warranted by considerations of case management. The Magistrate shall weigh the interests of justice, judicial economy, the complexity and projected length of the case in a manner consistent with this Order. The Magistrate shall give special consideration to whether this case lends itself to trials in tandem.

---

6. For example, all defendants save four are charged in count 4 of the indictment with conspiracy to defraud the United States. Those defendants excluded from count 4, defendants Sandhaus, Lyons, Zehm, and Caldwell, are charged with four counts, and each is charged with the same four counts. The Magistrate might consider the advantages and disadvantages of conducting a separate trial for defendants Sandhaus, Lyons, Zehm, and Caldwell.

7. Additional examples of case divisions can be found in *Vastola,* 670 F.Supp. at 1260–65 and in *Gallo,* 668 F.Supp. at 758–61.